1   ROBERT E. OPERA – State Bar No. 101182
    ropera@winthropcouchot.com
2   JEANNIE KIM – State Bar No. 270713
    jkim@winthropcouchot.com
3   **WINTHROP COUCHOT**
    **PROFESSIONAL CORPORATION**
4   660 Newport Center Drive, Suite 400
5   Newport Beach, CA 92660
    Telephone:    (949) 720-4100
6   Facsimile:    (949) 720-4111

7
    General Insolvency Counsel for
8   Debtor and Debtor-in-Possession

9

10              **UNITED STATES BANKRUPTCY COURT**

11              **SOUTHERN DISTRICT OF CALIFORNIA**

12

13  In re:                              Case No. 12-16423 MM11

14  IMAGENETIX, INC., a Nevada          Chapter 11 Proceeding
    corporation,
15                                      **DECLARATION OF LOWELL GIFFHORN IN**
                                        **SUPPORT OF CONFIRMATION OF**
16                                      **DEBTOR'S THIRD AMENDED CHAPTER 11**
                   Debtor and          **PLAN OF REORGANIZATION**
17                 Debtor-in-Possession.
                                        DATE:      September 10, 2014
18                                      TIME:      2:00 p.m.
19                                      PLACE:     Department 1
                                                   325 West "F" Street
20                                                 San Diego, CA 92101

21

22

23

24

25

26

27

28

1    I, Lowell W. Giffhorn, hereby declare and state as follows:

2    1.    I am the Chief Financial Officer of Imagenetix, Inc., the debtor and debtor-in-

3    possession in this Chapter 11 case ("Debtor").  The matters set forth herein are within my own

4    personal knowledge, and, if called upon as a witness, I could and would competently testify

5    thereto.

6    2.    This Declaration is provided in support of the confirmation of the Debtor's Third

7    Amended Chapter 11 Plan of Reorganization ("Third Amended Plan").[1]  By this Declaration, I

8    provide, among other things, evidence in support of the feasibility of the Third Amended Plan.

9    ## BACKGROUND OF DECLARANT

10    3.    I have served as Chief Financial Officer of the Debtor since about October 2005.

11    4.    I obtained a BS in Accountancy from the University of Illinois in 1969, and

12    obtained an MBA degree from National University in 1976.  I have practiced as an accountant for

13    more than 40 years.

14    5.    I have served as Chief Financial Officer for a number of companies.  From about

15    September 1987 to about June 1990, and from about June 1992 to about August 1996, I was the

16    Chief Financial Officer of Sym-Tek Systems, Inc. ("Sym-Tek").  In May 1994, Sym-Tek filed a

17    chapter 11 petition for relief in the United States Bankruptcy Court for the Southern District of

18    California (Case No. 94-05651-PB11).  Sym-Tek confirmed and consummated a Chapter 11 plan.

19    I helped to oversee Sym-Tek's Chapter 11 case, and the formulation, confirmation and

20    consummation of Sym-Tek's Chapter 11 plan.

21    6.    From about November 1996 to about June 2005, I served as the Chief Financial

22    Officer of Patriot Scientific Corp., a publicly-held semiconductor and intellectual property

23    company.  Since about October 2005, I have served as the Chief Financial Officer of Brendan

24    Technologies, Inc. ("Brendan"), a publicly-held company that provides computer software to the

25    pharmaceutical and life science industries.  I also serve as a Director of Brendan.

26

27    ---

[1] Unless otherwise specified herein, the definitions of the capitalized terms contained herein are as set forth in the Third Amended Plan.

28    

**DECLARATION OF LOWELL GIFFHORN IN SUPPORT OF CONFIRMATION OF DEBTOR'S THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION**

MAINDOCS-#204753-v1-Imagenetix_GiffhornDecReThirdAmdPlan

7.      As Chief Financial Officer of the Debtor, I am responsible for overseeing and managing all aspects of the Debtor's financial affairs.  I am responsible for overseeing the preparation and maintenance of all financial reporting by the Debtor, including financial reporting required of the Debtor as a public company.  I also am responsible for all financial reporting in connection with the Debtor's Chapter 11 case, and I am primarily responsible for overseeing the administration of the Debtor's Chapter 11 case and for interfacing with the Debtor's counsel with respect to proceedings in the Debtor's case.  The following summarizes certain of the services that I provide to the Debtor:

(a)    Financial Matters.  I am responsible for supervising all aspects of the Debtor's financial affairs.

i.    I supervise and perform physical inventories.

ii.    I prepare the Debtor's financial statements.

iii.    I prepare, analyze and monitor the Debtor's financial budgets.

iv.    I monitor the Debtor's receivables, payables and bank records.

v.    I analyze and pay the Debtor's cash disbursements.

vi.    I review, approve and implement the Debtor's internal financial controls.

(b)    Legal Support.

- I review, analyze and provide support for pending litigation involving the Debtor.

- I review, analyze and provide support for the administration of this Case.

- I prepare operating reports for this Case.

- I interface with and provide support for the Debtor's counsel in this Case.

- I review and comment on pleadings in this Case.

-3-

(c)     <u>Settlements</u>.

- I evaluated and commented on the TriPharma Settlement and the Nikken Settlement, and am familiar with the terms thereof.

(d)     <u>Investor Relations Matters</u>.

- I interface with, and provide support for communications with, investors.

(e)     <u>Public Reporting Matters</u>.

- I analyze and prepare public reports for the Debtor.
- I coordinate reporting efforts with the Debtor's CPAs.

(f)     <u>Funding Matters</u>.

- I assisted the Debtor in the Debtor's efforts to obtain the Equity Infusions and I have communicated and continue to communicate with Equity Investors.

8.      I was the representative of the Debtor primarily responsible for overseeing the preparation of the Debtor's Second Amended Chapter 11 Plan of Reorganization ("Second Amended Plan") and accompanying Disclosure Statement and was involved extensively in the preparation of the financial information contained in the Second Amended Plan and Disclosure Statement, including the financial reporting, claims analysis, Financial Projections, and Liquidation Analysis provided by the Debtor pursuant to the Disclosure Statement.

9.      To the best of my knowledge, the information contained in the Debtor's Disclosure Statement regarding the Debtor's financial affairs and historical financial performance is materially accurate.  Projections of the Debtor's financial affairs contained in the Disclosure Statement were prepared in good faith and were prepared fairly, and I believe that the assumptions underlying such projections, except only for the changed circumstances described hereinbelow regarding the funding of the Debtor's Chapter 11 plan of reorganization and regarding the Distributions payable on or promptly after the Effective Date of the plan of reorganization, were reasonable and continue to be reasonable.

-4-

**DECLARATION OF LOWELL GIFFHORN IN SUPPORT OF CONFIRMATION OF DEBTOR'S THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION**

MAINDOCS-#204753-v1-Imagenetix_GiffhornDecReThirdAmdPlan

## THE DEBTOR

10.     The Debtor is a corporation organized under the laws of the State of Nevada.  The Debtor was founded in 1988.  The Debtor is a publicly-traded company, with its stock traded on the Over-The-Counter Bulletin Board market.

11.     The Debtor is in the business of developing, formulating, licensing and marketing, over-the-counter, natural-based nutritional supplements and skin care products.  The Debtor's products are proprietary and are offered through multiple channels of distribution, including direct sales in the mass market through retailers, direct marketing companies, medical, health and nutritional professionals, medical newsletters and direct response radio and television.

12.     The Debtor's current officers are:  William Spencer (Chief Executive Officer and President); Debra L. Spencer (Corporate Secretary); and I.  The members of the Debtor's Board of Directors are Mr. Spencer and William A. Toomey.

## FORMULATION OF THE DEBTOR'S PLAN/DEBTOR'S GOOD FAITH

13.     The Debtor has worked diligently to try to negotiate with Creditors a consensual Chapter 11 plan of reorganization.  It has been the Debtor's goal during this Case to achieve with Creditors a consensual resolution of their Claims.

14.     The largest Creditor in the Case is TriPharma.  The Debtor engaged in extensive negotiations, over a number of months, to attempt to negotiate a resolution of its differences with TriPharma.  The Debtor ultimately was able to settle its differences with TriPharma and the settlement was confirmed pursuant to the TriPharma Settlement Agreement, a copy of which is attached as Exhibit "1" to the Third Amended Plan.  The TriPharma Settlement Agreement was approved by order of the Court entered on November 4, 2013.

15.     The largest Secured Creditor in the Debtor's Case is Pacific Rainbow.  As discussed hereinbelow, the Debtor believes that, with the modifications to the treatment of Pacific Rainbow's Allowed Secured Claim contained in the Third Amended Plan, Pacific Rainbow supports the confirmation of the Third Amended Plan.

16.     No objection has been filed with respect to the confirmation of the Second Amended Plan.  TriPharma has cast ballots in support of the confirmation of the Second Amended Plan.  As discussed hereinbelow, Pacific Rainbow has cast a ballot in support of the confirmation of the Second Amended Plan.  Pacific Rainbow's and TriPharma's Claims constitute a total of approximately 98% of the Claims asserted against the Debtor.

17.     Support for the confirmation of the Second Amended Plan is almost unanimous.  In addition to the ballots accepting the Second Amended Plan cast by TriPharma and by Pacific Rainbow, the Class of Allowed General Unsecured Claims (Class 5) has voted to accept the Plan.  Thus, the major Creditor constituents in this Case -- TriPharma, Pacific Rainbow and the General Unsecured Creditors -- support the confirmation of the Second Amended Plan, as modified by the Third Amended Plan.

18.     The Debtor filed this Case to restructure its indebtedness and to maximize recovery by Creditors.  I believe that the Debtor's efforts in this regard have been successful.  The Debtor's reorganization will move forward and will be effectuated pursuant to the confirmation of the Third Amended Plan.  By reason thereof, value in the Debtor's business will not only be preserved but, in fact, will be enhanced, for the benefit of the Debtor's Creditors.  The Allowed Secured Claims of TriPharma and Pacific Rainbow will be satisfied in this Case on terms agreed upon by them, and holders of Allowed General Unsecured Claims will receive Distributions on account of their Claims substantially higher than they would receive in a Chapter 7 liquidation proceeding.

19.     At all times, the Debtor's objective in this Case has been to reorganize its business in a manner that will maximize the economic value of its business enterprise and to distribute that value to Creditors in accordance with applicable law.  The Debtor filed the Second Amended Plan and the Third Amended Plan in good faith and in furtherance of such objective, and I believe that, pursuant to the confirmation of the Third Amended Plan, the Debtor will achieve such objective.

20.     The Debtor has acted at all times in this Case to maximize the value of its estate for the benefit of its creditors.  The Debtor's operations have been profitable since the Petition Date.  From the Petition Date through July 31, 2014, the Debtor generated a total of approximately

**DECLARATION OF LOWELL GIFFHORN IN SUPPORT OF CONFIRMATION OF DEBTOR'S THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION**

MAINDOCS-#204753-v1-Imagenetix_GiffhornDecReThirdAmdPlan

$1,061,370 in profits.  Furthermore, since the Petition Date, the Debtor's assets have increased in value.  From the Petition Date through July 31, 2014, the aggregate amount of the Debtor's cash, accounts receivable and inventory increased by approximately 165%.  The Debtor also has pursued diligently the Debtor's litigation claims for the benefit of the Debtor's Creditors.  Pursuant to the Nikken Settlement, the Debtor realized approximately $267,500 in net recovery for the estate.

## PACIFIC RAINBOW'S CONCERNS REGARDING SECOND AMENDED PLAN/PACIFIC RAINBOW SETTLEMENT AGREEMENT/INABILITY TO FINALIZE PACIFIC RAINBOW SETTLEMENT AGREEMENT

21.    Pursuant to the Second Amended Plan, the Debtor proposed to pay Pacific Rainbow's Allowed Secured Claim in installments over a period of three years, in accordance with the terms and conditions of the Second Amended Plan.  Pacific Rainbow advised the Debtor that it objected to such treatment of its Allowed Secured Claim pursuant to the Second Amended Plan and threatened to file opposition to the Second Amended Plan.

22.    The Debtor and Pacific Rainbow engaged in extensive negotiations to attempt to resolve Pacific Rainbow's concerns regarding the treatment of its Allowed Secured Claim pursuant to the Second Amended Plan.  As a result of such negotiations, the Debtor and Pacific Rainbow were able to reach agreement regarding material terms of a settlement, confirmed in a draft settlement agreement ("Pacific Rainbow Settlement Agreement"), resolving their differences.  Pursuant to the Pacific Rainbow Settlement Agreement, the Debtor and Pacific Rainbow agreed, in part, as follows:

a.    Sale of Intellectual Property.  The Debtor agreed to sell and to assign to Pacific Rainbow, free and clear of all liens and interests, certain intellectual property rights and interests of the Debtor, in accordance with the terms and conditions of the draft Pacific Rainbow Settlement Agreement (such intellectual property rights and interests are referred to in the Pacific Rainbow Settlement Agreement as the "Celadrin Interest").  Pacific Rainbow agreed to pay to the Debtor a cash purchase price of

-7-

$2,300,000 in consideration of the Debtor's sale and assignment to Pacific Rainbow of the Celadrin Interest.  The Debtor intended to use such payment to facilitate the funding of Distributions under the Second Amended Plan.

       b.     <u>Extinguishing of Pacific Rainbow's Allowed Secured Claim</u>.  Pacific Rainbow agreed to forgive and extinguish, fully and forever, effective as of the Court's approval of the Pacific Rainbow Settlement Agreement, all of Pacific Rainbow's claims against the Debtor.  Accordingly, Pacific Rainbow agreed pursuant to the draft Pacific Rainbow Settlement Agreement that it would obtain no recovery on account of its Allowed Secured Claim pursuant to the Second Amended Plan.  The extinguishing of Pacific Rainbow's Allowed Secured Claim would resolve Pacific Rainbow's concerns regarding the treatment of its Allowed Secured Claim under the Second Amended Plan.

       c.     <u>Support for Plan Confirmation</u>.  Subject to the Court's approval of the Pacific Rainbow Settlement Agreement, Pacific Rainbow agreed to provide to the Debtor cooperation with respect to the confirmation of the Debtor's Second Amended Plan, including, without limitation, by Pacific Rainbow's voting in favor of the confirmation of the Second Amended Plan.

23.     On June 20, 2014, the Debtor filed its Emergency Motion for Order Approving: (1) Debtor's Compromise of Controversy with Pacific Rainbow International, Inc.; (2) Sale of Debtor's Interests in Certain Intellectual Property; and (3) Assumption and Assignment of Debtor's Agreements with Proprietary Nutritionals, Inc. [Docket No. 384] ("Pacific Rainbow Settlement Motion").  By the Pacific Rainbow Settlement Motion, the Debtor requested, among other things, that the Court approve the Pacific Rainbow Settlement Agreement.  A copy of the Pacific Rainbow Settlement Agreement, in substantially final form, is attached as Exhibit "1" to the Declaration of Lowell Giffhorn filed in support of the Pacific Rainbow Settlement Motion [Docket No. 385].

24.     While the Debtor and Pacific Rainbow were able to reach agreement regarding substantially all of the material provisions of the Pacific Rainbow Settlement Agreement, the

-8-

Debtor and Pacific Rainbow were <u>not</u> able to resolve certain differences between them regarding the provisions of the Pacific Rainbow Settlement Agreement, and, accordingly, the Debtor and Pacific Rainbow have <u>not</u> executed the Pacific Rainbow Settlement Agreement.  It appears that the Debtor and Pacific Rainbow will not be able to finalize the provisions of the Pacific Rainbow Settlement Agreement.

25.    In addition, on July 13, 2014, TriPharma filed opposition to the Pacific Rainbow Settlement Motion [Docket No. 399] , asserting, among other things, that the provisions of the Pacific Rainbow Settlement Agreement impair TriPharma's rights pursuant to the TriPharma Settlement Agreement.  The Debtor disputes TriPharma's assertion in this regard.  The Debtor's efforts to resolve TriPharma's objection to the Pacific Rainbow Settlement Motion, however, have been unsuccessful.

**DEBTOR'S OBTAINING ADDITIONAL EQUITY INFUSIONS TO FUND ITS PLAN IN LIEU OF THE PACIFIC RAINBOW SETTLEMENT AGREEMENT**

26.    The Debtor continued twice the hearing on the confirmation of the Second Amended Plan in order to try to resolve the Debtor's differences with Pacific Rainbow regarding the provisions of the Pacific Rainbow Settlement Agreement, and to try to resolve TriPharma's objections to the Pacific Rainbow Settlement Motion.  Despite the Debtor's diligent efforts, the Debtor has <u>not</u> been able to resolve its differences with Pacific Rainbow regarding the provisions of the Pacific Rainbow Settlement Agreement nor to resolve TriPharma's objections to the Pacific Rainbow Settlement Motion.  Faced with this impasse, and desiring to move forward with the Debtor's reorganization, the Debtor made efforts to raise additional Equity Infusions to fund the Debtor's plan of reorganization in lieu of the funds that the Debtor was to have obtained pursuant to the Pacific Rainbow Settlement Agreement so that the Debtor could forego entering into the Pacific Rainbow Settlement Agreement.  The Debtor's efforts in this regard have been successful.  As of September 2, 2014, the Debtor had raised a total of $2,026,170 in Equity Infusions from Equity Investors to fund the Debtor's plan of

reorganization.[2]  By reason of such additional Equity Infusions, the Debtor will have funds sufficient to confirm the Debtor's plan of reorganization, without any need for the funds that the Debtor was to have obtained from Pacific Rainbow pursuant to the Pacific Rainbow Settlement Agreement.

27.    By virtue of the Debtor's having obtained additional Equity Infusions, the Debtor will have cash sufficient to pay in full, in Cash, Pacific Rainbow's Allowed Secured Claim promptly after the Effective Date of the Debtor's plan of reorganization.  The Debtor believes that Pacific Rainbow has no objection to such treatment of its Allowed Secured Claim pursuant to the Debtor's plan of reorganization.  The Debtor intends, therefore, to terminate the Pacific Rainbow Settlement Agreement and to withdraw the Pacific Rainbow Settlement Motion.

28.    Upon the Debtor's withdrawal of the Pacific Rainbow Settlement Motion, TriPharma's objection to the Pacific Rainbow Settlement Motion will be resolved.

29.    The Debtor's having raised additional Equity Infusions has resolved the Debtor's funding needs for the Debtor's plan of reorganization, and allows the Debtor to withdraw the Pacific Rainbow Settlement Motion, thereby resolving the remaining impediments to the confirmation of the Debtor's plan of reorganization and facilitating the Debtor's successful reorganization of its financial affairs.

## DEBTOR'S MOTION FOR ORDER APPROVING NON-MATERIAL MODIFICATIONS TO DEBTOR'S SECOND AMENDED PLAN

30.    In order to effectuate a consensual resolution of plan confirmation proceedings in this case, the Debtor needs to modify the Second Amended Plan.  Accordingly, on August 29, 2014, the Debtor filed its Motion for Order Approving Non-Material Modifications to Debtor's Second Amended Chapter 11 Plan of Reorganization ("Plan Modification Motion"), pursuant to which the Debtor requests, among other things, that the Court authorize the Debtor to make modifications to the Second Amended Plan.

---

[2] As of the time of the filing of the Second Amended Plan, the Debtor had been able to raise approximately $940,000 in Equity Infusions.

-10-

31.     Concurrently with the filing of the Plan Modification Motion, the Debtor filed the Third Amended Plan, incorporating the Debtor's proposed modifications to the Second Amended Plan, and an ex parte application for an order shortening time ("Ex Parte Application") by which the Debtor requested that the Court shorten the time for the giving of notice of and the conducting of a hearing on the Plan Modification Motion.  The Court granted the Ex Parte Application, and the Plan Modification Motion is scheduled to be heard on September 10, 2014, concurrently with the hearing on the confirmation of the Second Amended Plan.

32.     By the Plan Modification Motion, the Debtor proposes to modify the Second Amended Plan in order to change the treatment of Pacific Rainbow's Allowed Secured Claim pursuant to the Second Amended Plan.  By reason of the Debtor's having obtained additional Equity Infusions, the Debtor now has Cash sufficient to satisfy Pacific Rainbow's Allowed Secured Claim promptly after the Effective Date of the proposed Third Amended Plan.  The Third Amended Plan provides that, on or before the 45th day after the Effective Date of the Third Amended Plan, the Reorganized Debtor will pay to Pacific Rainbow in full, in Cash, the amount of Pacific Rainbow's Allowed Secured Claim.  It is the Debtor's understanding that Pacific Rainbow supports such treatment of such Pacific Rainbow's Allowed Secured Claim.

33.     In the event that the Court grants the Plan Modification Motion, the Debtor intends to withdraw the Pacific Rainbow Settlement Motion.

## FEASIBILITY OF DEBTOR'S THIRD AMENDED PLAN

34.     By the Disclosure Statement accompanying the Second Amended Plan, the Debtor provided the Feasibility Analysis in order to demonstrate that it would be feasible for the Reorganized Debtor to pay the obligations that would need to be paid on or about the Effective Date of the Second Amended Plan and to pay the accruing obligations under the Second Amended Plan.  The Feasibility Analysis was prepared in or about May 2014.  Two material assumptions underlying the Feasibility Analysis have changed.  First, the Debtor projected that it would be able to raise approximately $950,000 in Equity Infusions in order to fund the Second

-11-

**DECLARATION OF LOWELL GIFFHORN IN SUPPORT OF CONFIRMATION OF DEBTOR'S THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION**

MAINDOCS-#204753-v1-Imagenetix_GiffhornDecReThirdAmdPlan

1   Amended Plan.  In fact, the Debtor has been able to raise $2,026,170 in Equity Infusions.

2   Second, the Debtor projected that it would pay its obligations to Pacific Rainbow over a period

3   of three years after the Effective Date of the Second Amended Plan.  As stated hereinabove,

4   pursuant to the Third Amended Plan, the Debtor proposes to pay in full, in Cash, Pacific

5   Rainbow's Allowed Secured Claim (approximately $740,000, plus Pacific Rainbow's

6   reasonable attorneys' fees and costs) within 45 days after the Effective Date of the Third

7   Amended Plan.  By reason of these changes, I am providing herewith an updated Feasibility

8   Analysis in order to demonstrate that the proposed Third Amended Plan is feasible.[3]

9       35.     In order to demonstrate the feasibility of the proposed Third Amended Plan, I have

10  prepared projections indicating, among other things, my estimate of the Reorganized Debtor's

11  obligations under the Third Amended Plan and the funds projected to be available to the

12  Reorganized Debtor to satisfy such obligations ("Amended Financial Projections").  A copy of the

13  Amended Financial Projections is attached as Exhibit "1" hereto and is incorporated herein by this

14  reference.  Based upon my extensive knowledge of the financial affairs of the Debtor, the

15  knowledge of the Debtor's industry that I have obtained during the course of my serving as the

16  Debtor's Chief Financial Officer since 2005, and my more than 40 years' experience as an

17  accountant, it is my opinion that the Amended Financial Projections are a materially accurate

18  projection of the Reorganized Debtor's financial performance over the term of the Third Amended

19  Plan and the Reorganized Debtor's ability to meet its obligations to Creditors under the Third

20  Amended Plan.

21

22  [3] I note that, in connection with the hearing on the confirmation of the Second Amended Plan which was scheduled

23  for June 25, 2014, I provided to the Court a declaration [Docket No. 381] for the purpose of demonstrating that the requirements of Section 1129(a) of the Bankruptcy Code, including the feasibility requirement contained in

24  Section 1129(a)(11), have been satisfied in this case.  By such declaration, I made the assumption that the Pacific Rainbow Settlement Agreement would be finalized and approved by this Court, and, accordingly, that, pursuant to the

25  Pacific Rainbow Settlement Agreement, the Debtor's obligations to Pacific Rainbow would be extinguished under the Second Amended Plan and that the Debtor would obtain $2.3 million in Cash from Pacific Rainbow in exchange for

26  the Debtor's sale and assignment to Pacific Rainbow of the Celadrin Interest.  As stated hereinabove, it appears that the Debtor will not be able to finalize with Pacific Rainbow the Pacific Rainbow Settlement Agreement.  If the Court

27  grants the Plan Modification Motion, the Debtor intends to withdraw the Pacific Rainbow Settlement Motion, and to pay in full the Debtor's obligations to Pacific Rainbow within 45 days after the Effective Date of the proposed Third
    Amended Plan.

28                                          -12-

36.     As set forth in the Amended Financial Projections, by reason of the Equity Infusions obtained by the Debtor, the Reorganized Debtor will have funds sufficient to pay all obligations required to be paid under the Third Amended Plan.

37.     Within forty-five (45) days after the Effective Date of the Third Amended Plan, the Reorganized Debtor must pay all of the Allowed Administrative Claims, any Allowed Priority Non-Tax Claims, United States Trustee Fees, any Cure Claims, the Allowed Secured Claim of Pacific Rainbow, and an initial Distribution to TriPharma in the amount of $150,000.  With the additional Equity Infusions obtained by the Debtor, the Reorganized Debtor will have cash sufficient to pay such Claims.

38.     I project that the following Claims, which must be paid on or promptly after the Effective Date, will be asserted against the Debtor:

| | |
|---|---:|
| Administrative Claim of Winthrop Couchot | 540,000 |
| Administrative Claim of the Shustak Firm | 300,000 |
| United States Trustee Fees | 7,000 |
| Cure Claims | 0 |
| Allowed Priority Non-Tax Claims | 0 |
| Allowed Secured Claim of Pacific Rainbow | 807,000 |
| Initial Distribution to TriPharma | $150,000 |
| **TOTAL:** | **$1,804,000** |

39.     I project that the Reorganized Debtor will have the following Cash available to it to pay the Allowed Claims that must be paid on or promptly after the Effective Date:

| | |
|---|---:|
| Cash (includes Cash from the Nikken Settlement ) | $233,000 |
| Equity Infusions | 2,026,170 |
| **TOTAL:** | **$2,259,170** |

40.     Significant assumptions underlying the Feasibility Analysis include the following:

a.     <u>Effective Date of the Plan</u>.  I anticipate that the Effective Date of the Third Amended Plan will occur on or about September 18, 2014.

-13-

1          b.     <u>Unpaid Administrative Claims ($847,000)</u>.  Administrative Claims in the

2    Case consist of fees of Professionals employed in the Case ("Professional Fees") and

3    United States Trustee Fees.[4]

4          i.    <u>Professional Fees ($840,000)</u>.  My projection of the Professional

5    Fees which will be asserted against the Debtor as of the Effective Date derives, in

6    large part, from information provided to the Debtor by such Professionals.  I

7    project that Administrative Claims of Professionals will be approximately $840,000

8    as of the Effective Date.[5]  The projection of Administrative Claims of Professionals

9    employed in the Case is only an estimate, and is not to be construed as any

10    agreement by the Debtor as to the amount or reasonableness of such fees.

11          ii.    <u>United States Trustee Fees ($7,000)</u>.  I project that the Reorganized

12    Debtor will have to pay, on or about the Effective Date, approximately $7,000 in

13    United States Trustee Fees.  This projection is based upon my estimate of the

14    amount of disbursements that the Debtor will make through the Effective Date.

15          c.     <u>Cure Claims ($0)</u>.  I project that the Reorganized Debtor will owe no

16    amount of Cure Claims.  My projection derives from my analysis of the Debtor's contracts

17    and unexpired leases and the fact that no opposition was filed with respect to the zero

18    amount of the Cure Claims listed in Exhibit "2" to the Plan.

19          d.     <u>Allowed Priority Non-Tax Claims ($0)</u>.  The Debtor paid timely all pre-

20    petition wage claims.  Accordingly, I believe that there are no Priority Non-Tax Claims in

21    the Case.

22

23

24    [4] This projection assumes that there will be no material Administrative Claims that will need to be paid on or about the Effective Date, other than the unpaid Administrative Claims of Professionals and the United States Trustee Fees.

25    Since the Debtor is paying all accruing operating expenses as they come due, this assumption should be valid.

26    [5] This projection is based upon the following:  the unpaid fees and costs of the Debtor's counsel, Winthrop Couchot, in the amount of approximately $470,000 as of July 31, 2014; the Administrative Claim of the Shustak Firm in the amount of approximately $300,000 (the Shustak Firm has agreed to reduce its Administrative Claim from $322,500 to

27    $300,000); and the Debtor's estimate that approximately $70,000 in fees and costs of Winthrop Couchot will be incurred from July 31, 2014 through the Effective Date.

28    -14-

e.    <u>Allowed Secured Claim of Pacific Rainbow ($807,000)</u>.  The Debtor owes to Pacific Rainbow approximately $747,000, plus its reasonable attorneys' fees and costs.  Based upon preliminary discussions with Pacific Rainbow, the Debtor estimates that Pacific Rainbow's Claim for its fees and costs will be in the amount of approximately $60,000.

f.    <u>Initial Distribution to TriPharma ($150,000)</u>.  By the TriPharma Settlement Agreement, the terms of which are incorporated into the Third Amended Plan, the Reorganized Debtor is required to pay to TriPharma, within five calendar days after the Effective Date, an initial Distribution in the amount of $250,000, less the amount of Adequate Protection Payments paid to TriPharma.  The Debtor has paid to TriPharma a total of $100,000 in Adequate Protection Payments.

g.    <u>Reorganized Debtor's Cash Resources as of the Effective Date</u>.  The following is my projection of the cash resources that will be available to the Reorganized Debtor to fund the Distributions required to be paid on or promptly the Effective Date.

i.    <u>Cash ($233,000)</u>.  As of September 1, 2014, the Debtor had approximately $100,000 in Cash.  I project that the Debtor should have approximately $233,000 in Cash as of the Effective Date.

ii.    <u>Equity Infusions</u>.  The Debtor has obtained $2,026,170 in Equity Infusions from Equity Investors pursuant to the provisions of the Series A Preferred Stock Agreements.  Winthrop Couchot is holding in its trust account <u>all</u> of such Equity Infusions.  A schedule listing the Equity Infusions provided by Equity Investors held in Winthrop Couchot's trust account is attached hereto as Exhibit "2" and is incorporated herein by this reference.

I project, therefore, that the Reorganized Debtor will have funds sufficient to pay all payments that must be paid on or about the Effective Date of the Third Amended Plan.

41.    After payment of Allowed Administrative Claims, any Cure Claims, United States Trustee Fees, any Allowed Priority Non-Tax Claims, and Pacific Rainbow's Allowed Secured

-15-

1  Claim, the only remaining material Claims to be paid pursuant to the Third Amended Plan are the

2  Allowed Secured Claim of TriPharma (Class 2), Allowed Priority Tax Claims and Allowed

3  General Unsecured Claims (Class 5).

4        a.    <u>Allowed Secured Claim of TriPharma (Class 2) ($1,900,000)</u>.  Pursuant to

5  the Third Amended Plan, TriPharma will be granted an Allowed Secured Claim in the

6  amount of $3,500,000.  Pursuant to the Third Amended Plan, the Debtor has the right to

7  satisfy TriPharma's Allowed Secured Claim by paying to TriPharma the amount of

8  $2.0 million, <u>less</u> the amount of the pre-confirmation Adequate Protection Payments paid

9  by the Debtor to TriPharma, if the Reorganized Debtor pays to TriPharma such amount by

10  the 18th month after the Effective Date.

11  The Debtor has paid to TriPharma $100,000 in Adequate Protection Payments.

12  Therefore, pursuant to the Third Amended Plan, the Reorganized Debtor has the right to

13  satisfy TriPharma's Allowed Secured Claim by paying to TriPharma the total amount of

14  $1,900,000 within 18 months after the Effective Date.  By the Amended Financial

15  Projections, the Debtor projects that the Reorganized Debtor will have funds sufficient to

16  pay timely the quarterly Distributions that will be owed on account of TriPharma's

17  Allowed Secured Claim within 18 months after the Effective Date, and to satisfy the

18  balance of TriPharma's Allowed Secured Claim within 18 months after the Effective Date.

19  The Debtor projects that the Reorganized Debtor will pay the balance owed to TriPharma

20  at or about the 18th month after the Effective Date primarily from the Cash that the

21  Reorganized Debtor will be able to accumulate from the Reorganized Debtor's operations

22  after the Effective Date; if such Cash proves to be insufficient, the shortfall will be paid

23  from the following sources:  Equity Infusions (the Debtor has obtained commitments for

24  additional Equity Infusions, as needed by the Reorganized Debtor); from debt financing

25  (the Reorganized Debtor's assets would be unencumbered after satisfaction of the Allowed

26  Secured Claim of TriPharma); and/or from sales or licenses of the Reorganized Debtor's

27  intellectual property rights and interests.

28
-16-

b.    <u>Allowed Priority Tax Claims ($1,705)</u>.  $1,705 in Priority Tax Claims has been asserted in the Case.

c.    <u>Allowed General Unsecured Claims (Class 5) ($145,000)</u>.  As stated in the Feasibility Analysis contained in the Disclosure Statement, approximately $1.5 million in General Unsecured Claims have been asserted against the Debtor.  Exhibit "E" to the Disclosure Statement sets forth the Debtor's estimate of the amount of Allowed General Unsecured Claims in the Case.  Based upon my thorough evaluation of the General Unsecured Claims asserted in the Case and the Debtor's books and records and my extensive knowledge of the Debtor's financial affairs, it is my belief that Exhibit "E" sets forth a materially accurate estimate of the Allowed Claims in the Case, except for the following:  the Debtor has now determined not to object to, but not allow, Rite Aid's General Unsecured Claim in the amount of $509,000; and the Debtor now has determined, and the Shustak Firm has acknowledged, that the Shustak Firm has no General Unsecured Claim.  I project that approximately $725,000 in General Unsecured Claims will be allowed in the Case.

Pursuant to the Third Amended Plan, the Debtor is required to pay on account of Allowed General Unsecured Claims, a 20% Distribution, payable in sixteen (16) equal quarterly installments over the term of the Third Amended Plan.  Accordingly, I project that the Reorganized Debtor will be required to pay, under the Third Amended Plan, a total of approximately $145,000 on account of Allowed General Unsecured Claims.

The Debtor believes that, after the Reorganized Debtor pays in full the Claims that must be paid on or promptly after the Effective Date, the Reorganized Debtor will have Cash sufficient to prepay, in full, Allowed Priority Tax Claims and Allowed General Unsecured Claims.  By the Plan Modification Motion, the Debtor requests that the Court authorize the Debtor to modify the Second Amended Plan in order to provide authority for the Reorganized Debtor to prepay such Allowed Claims under the Third Amended Plan.  The Amended Financial Projections assume that the Reorganized Debtor will prepay (but

-17-

**DECLARATION OF LOWELL GIFFHORN IN SUPPORT OF CONFIRMATION OF
DEBTOR'S THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION**

MAINDOCS-#204753-v1-Imagenetix_GiffhornDecReThirdAmdPlan

do not require the Reorganized Debtor to prepay) such Allowed Claims, a total of $147,000.

42.     Based upon my extensive knowledge of the financial affairs of the Debtor, the knowledge of the Debtor's industry that I have obtained during the course of my serving as the Debtor's Chief Financial Officer since 2005, and my more than 40 years' experience as an accountant, it is my opinion that the assumptions underlying the Amended Financial Projections are reasonable, and that the financial performance of the Reorganized Debtor projected by the Amended Financial Projections is achievable by the Reorganized Debtor.  As indicated by the Amended Financial Projections, it is my opinion that the Reorganized Debtor will have funds sufficient to pay all obligations required to be paid by the Reorganized Debtor under the Third Amended Plan.

43.     While a projection of the Reorganized Debtor's operations are subject to a variety of unpredictable outside forces and events which could affect adversely such projections, I believe that, given the significant care and attention devoted to the preparation of the Amended Financial Projections, the Amended Financial Projections are reasonable and are as valid a projection of the Reorganized Debtor's financial performance as is available under the circumstances of this Case.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 3rd day of September 2014, at San Diego, California.

/s/ *Lowell W. Giffhorn*
Lowell W. Giffhorn

-18-

# EXHIBIT "1"

Imagenetix, Inc.
Chapter 11 Plan Financial Projections
Balance Sheet
($ in Thousands)

| | 12/31/2013 Actual | 3/31/2014 Actual | 6/30/2014 Actual | 7/31/2014 Actual | 9/30/2014 Projected | 12/31/2014 Projected | 3/31/2015 Projected | 6/30/2015 Projected | 9/30/2015 Projected | 12/31/2015 Projected | 3/31/2016 Projected | 6/30/2016 Projected | 9/30/2016 Projected | 12/31/2016 Projected |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **ASSETS** | | | | | | | | | | | | | | |
| Unrestricted Cash | 187 | 49 | 54 | 173 | 233 | 214 | 409 | 559 | 755 | 934 | 31 | 332 | 703 | 1,057 |
| Accounts Receivable | 429 | 390 | 362 | 411 | 400 | 450 | 450 | 500 | 500 | 500 | 500 | 500 | 500 | 500 |
| Inventory | 36 | 45 | 194 | 192 | 175 | 175 | 175 | 175 | 175 | 175 | 175 | 175 | 175 | 175 |
| Total Current Assets | 652 | 484 | 610 | 776 | 808 | 839 | 1,034 | 1,234 | 1,430 | 1,609 | 706 | 1,007 | 1,378 | 1,732 |
| Property, Plant, and Equipment | 255 | 255 | 255 | 255 | 255 | 380 | 380 | 380 | 380 | 380 | 380 | 380 | 380 | 380 |
| Accumulated Depreciation/Depletion | (253) | (254) | (255) | (255) | (255) | (261) | (267) | (273) | (279) | (285) | (291) | (297) | (303) | (309) |
| Net Property, Plan, and Equipment | 2 | 1 | - | - | - | 119 | 113 | 107 | 101 | 95 | 89 | 83 | 77 | 71 |
| **Other Assets (Net of Amortization):** | | | | | | | | | | | | | | |
| Patents & Goodwill | 27 | 24 | 23 | 23 | 18 | 15 | 12 | 9 | 6 | 3 | - | - | - | - |
| Deposits | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 |
| Total Other Assets | 51 | 48 | 47 | 47 | 42 | 39 | 36 | 33 | 30 | 27 | 24 | 24 | 24 | 24 |
| TOTAL ASSETS | 705 | 533 | 657 | 823 | 850 | 997 | 1,183 | 1,374 | 1,561 | 1,731 | 819 | 1,114 | 1,479 | 1,827 |
| **Post-Petition Liabilities:** | | | | | | | | | | | | | | |
| Accounts Payable | 103 | 61 | 126 | 95 | 50 | 50 | 100 | 150 | 175 | 175 | 200 | 200 | 250 | 250 |
| Bank Line | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Administrative Fees | 290 | 300 | 439 | 471 | - | - | - | - | - | - | - | - | - | - |
| Customer Deposits | 134 | 108 | 221 | 170 | - | - | - | - | - | - | - | - | - | - |
| Interest | 7 | 7 | 6 | 7 | - | - | - | - | - | - | - | - | - | - |
| Total Post-Petition Liabilities | 534 | 476 | 792 | 743 | 50 | 50 | 100 | 150 | 175 | 175 | 200 | 200 | 250 | 250 |
| **Pre-Petition Liabilities:** | | | | | | | | | | | | | | |
| PRI- Class 1 | 747 | 747 | 747 | 747 | - | - | - | - | - | - | - | - | - | - |
| TriPharma- Class 2 | 3,184 | 2,950 | 2,721 | 2,658 | 2,250 | 2,150 | 2,050 | 1,950 | 1,850 | 1,725 | - | - | - | - |
| Taxes- Class 3 | 2 | 2 | 2 | 2 | - | - | - | - | - | - | - | - | - | - |
| Unsecured- Class 4 | 950 | 950 | 950 | 950 | - | - | - | - | - | - | - | - | - | - |
| Total Pre-Petition Liabilities | 4,883 | 4,649 | 4,420 | 4,357 | 2,250 | 2,150 | 2,050 | 1,950 | 1,850 | 1,725 | - | - | - | - |
| TOTAL LIABILITIES | 5,417 | 5,125 | 5,212 | 5,100 | 2,300 | 2,200 | 2,150 | 2,100 | 2,025 | 1,900 | 200 | 200 | 250 | 250 |
| **EQUITY:** | | | | | | | | | | | | | | |
| Pre-Petition Owners' Equity | (5,338) | (5,338) | (5,338) | (5,338) | (5,338) | (5,338) | (5,338) | (5,338) | (5,338) | (5,338) | (5,338) | (5,338) | (5,338) | (5,338) |
| Post-Petition Profit/(Loss) | 626 | 746 | 783 | 1,061 | 1,881 | 2,128 | 2,364 | 2,605 | 2,867 | 3,162 | 3,951 | 4,245 | 4,560 | 4,908 |
| Direct Charges to Equity- Unit sales | - | - | - | - | 1,217 | 1,217 | 1,217 | 1,217 | 1,217 | 1,217 | 1,217 | 1,217 | 1,217 | 1,217 |
| Direct Charges to Equity- Free trading | - | - | - | - | 790 | 790 | 790 | 790 | 790 | 790 | 790 | 790 | 790 | 790 |
| TOTAL EQUITY | (4,712) | (4,592) | (4,555) | (4,277) | (1,450) | (1,203) | (967) | (726) | (464) | (169) | 620 | 914 | 1,229 | 1,577 |
| TOTAL LIABILITIES & EQUITY | 705 | 533 | 657 | 823 | 850 | 997 | 1,183 | 1,374 | 1,561 | 1,731 | 820 | 1,114 | 1,479 | 1,827 |

Balance Sheet

plan_Financial_Projections_091014

Imagenetix, Inc.
Chapter 11 Plan Financial Projections
Plan Payment Schedule
($ in Thousands)

| | 12/31/2013 Actual | 3/31/2014 Actual | 6/30/2014 Actual | 9/30/2014 Projected | During Quarter Ended | | | | | | | | | Accum Projected |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | 12/31/2014 Projected | 3/31/2015 Projected | 6/30/2015 Projected | 9/30/2015 Projected | 12/31/2015 Projected | 3/31/2016 Projected | 6/30/2016 Projected | 9/30/2016 Projected | 12/31/2016 Projected | |
| **LIABILITIES** | | | | | | | | | | | | | | |
| Post-Petition Liabilities: | | | | | | | | | | | | | | |
| Administrative Fees - paid in cash | - | - | - | 110 | - | - | - | - | - | - | - | - | - | 110 |
| Administrative Fees - paid in stock | | | | 790 | | | | | | | | | | 790 |
| US Trustee | | 5 | 5 | 7 | | | | | | | | | | 17 |
| | | | | | | | | | | | | | | - |
| Pre-Petition Liabilities: | | | | | | | | | | | | | | - |
| PRi - Class 1 | - | - | - | 747 | - | - | - | - | - | - | - | - | - | 747 |
| TriPharma- Class 2 | - | 45 | 55 | 150 | 100 | 100 | 100 | 100 | 125 | 1,225 | - | - | - | 2,000 |
| Taxes- Class 3 | - | - | - | 2 | - | - | - | - | - | - | - | - | - | 2 |
| Unsecured- Class 4 | - | - | - | 145 | - | - | - | - | - | - | - | - | - | 145 |
| Total Pre-Petition Liabilities | - | 45 | 55 | 1,044 | 100 | 100 | 100 | 100 | 125 | 1,225 | - | - | - | 2,894 |
| | | | | | | | | | | | | | | |
| Total Plan Payments | - | 50 | 60 | 1,951 | 100 | 100 | 100 | 100 | 125 | 1,225 | - | - | - | 3,811 |
| | | | | | | | | | | | | | | |
| Stock payments | | | | | | | | | | | | | | |
| Holders of Winthrop claim | | | | 490 | | | | | | | | | | |
| Holders of Shustak claim | | | | 300 | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| Cash payments | | | | | | | | | | | | | | |
| PRi attorney | | | | 60 | | | | | | | | | | |
| Winthrop | | | | 50 | | | | | | | | | | |
| PRi | | | | 747 | | | | | | | | | | |
| TriPharma | | | | 150 | 100 | 100 | 100 | 100 | 125 | 1225 | | | | |
| San Diego County Tax Collector | | | | 2 | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| American Express | | | | 5 | | | | | | | | | | |
| Anderson Daymon | | | | 6 | | | | | | | | | | |
| Capital One | | | | 1 | | | | | | | | | | |
| Frank Sajovic | | | | 12 | | | | | | | | | | |
| Frutarom (held in disputed account) | | | | 2 | | | | | | | | | | |
| Guise | | | | 6 | | | | | | | | | | |
| HJ | | | | 3 | | | | | | | | | | |
| Meijer | | | | 2 | | | | | | | | | | |
| Natural Factors | | | | 0 | | | | | | | | | | |
| Pitney Bowes | | | | 102 | | | | | | | | | | |
| Rite Aid | | | | 5 | | | | | | | | | | |
| Tech Law | | | | 0 | | | | | | | | | | |
| Teldata | | | | 0 | | | | | | | | | | |
| Uline | | | | 0 | | | | | | | | | | |
| Walmart | | | | 0 | | | | | | | | | | |
| YRC | | | | 145 | | | | | | | | | | |

Plan Payment Schedule

Exhibit 1, Page 20

Imagenetix, Inc.
Chapter 11 Plan Financial Projections
Operating Statement
($ in Thousands)

| | Accum @ 12/31/13 Actual | 1QCY14 Actual | 2QCY14 Actual | 3QCY14 Jul Actual | 3QCY14 Aug Sep Projected | 4QCY14 Projected | 1QCY15 Projected | 2QCY15 Projected | 3QCY15 Projected | 4QCY15 Projected | 1QCY16 Projected | 2QCY16 Projected | 3QCY16 Projected | 4QCY16 Projected |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Gross Sales | 2,701 | 579 | 448 | 190 | 584 | 778 | 828 | 878 | 928 | 978 | 1,028 | 1,078 | 1,128 | 1,178 |
| Cost of Goods Sold: | 544 | 147 | 40 | 81 | 130 | 249 | 265 | 280 | 296 | 311 | 327 | 342 | 358 | 373 |
| Gross Profit | 2,157 | 432 | 408 | 109 | 454 | 529 | 563 | 598 | 632 | 667 | 701 | 736 | 770 | 805 |
| Operating Expenses: | | | | | | | | | | | | | | |
| Payroll - Insiders | 391 | 88 | 102 | 32 | 60 | 90 | 90 | 90 | 90 | 90 | 90 | 90 | 90 | 90 |
| Payroll - Other Employees | 167 | 23 | 27 | 8 | 16 | 60 | 90 | 90 | 120 | 120 | 150 | 150 | 180 | 180 |
| Payroll Taxes | 41 | 11 | 10 | 3 | 7 | 11 | 14 | 14 | 17 | 17 | 20 | 20 | 23 | 23 |
| Depreciation and Amortization | 33 | 5 | 1 | - | - | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 |
| Rent Expense - Real Property | 115 | 29 | 30 | 10 | 14 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 |
| Insurance | 62 | 20 | 18 | 4 | 11 | 15 | 25 | 25 | 25 | 25 | 30 | 30 | 30 | 30 |
| Real Property Taxes | 2 | - | - | - | - | - | - | 2 | - | - | - | 2 | - | - |
| Telephone and Utilities | 38 | 8 | 9 | 3 | 9 | 12 | 14 | 14 | 16 | 16 | 18 | 18 | 20 | 20 |
| Travel and Entertainment | 6 | 2 | 3 | 1 | 3 | 10 | 10 | 15 | 15 | 20 | 20 | 25 | 25 | 30 |
| Miscellaneous | 124 | 42 | 13 | 26 | 21 | 34 | 34 | 57 | 37 | 34 | 34 | 57 | 37 | 34 |
| Total Operating Expenses | 979 | 228 | 213 | 87 | 141 | 262 | 307 | 337 | 350 | 352 | 392 | 422 | 435 | 437 |
| Net Gain(Loss) from Operations | 1,178 | 204 | 195 | 22 | 313 | 267 | 256 | 261 | 282 | 315 | 309 | 314 | 335 | 368 |
| Non-Operating Income: | | | | | | | | | | | | | | |
| Net Gain on Claims Settlements TriPharma | - | - | - | - | 132 | | | | | | | | | |
| Net Gain on Litigation Settlements | - | - | - | 292 | | | | | | | | | | |
| Net Gain on Claims Settlements Unsecured | 43 | - | - | - | 505 | - | - | - | - | - | 500 | - | - | - |
| Total Non-Operating Income | 43 | - | - | 292 | 637 | - | - | - | - | - | 500 | - | - | - |
| Non-Operating Expense: | | | | | | | | | | | | | | |
| Interest Expense | 57 | 13 | 13 | 4 | - | - | - | - | - | - | - | - | - | - |
| Legal and Professional | 538 | 71 | 145 | 32 | 130 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 |
| Total Non-Operating | 595 | 84 | 158 | 36 | 130 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 |
| NET INCOME/(LOSS) | 626 | 120 | 37 | 278 | 820 | 247 | 236 | 241 | 262 | 295 | 789 | 294 | 315 | 348 |

**Imagenetix, Inc.**
Chapter 11 Plan Financial Projections
Operating Statement- Detail Breakdown
($ in Thousands)

| | Accum @ 12/31/13 Actual | 1QCY14 Actual | 2QCY14 Actual | 3QCY14 Jul Actual | 3QCY14 Aug Sep Projected | 4QCY14 Projected | 1QCY15 Projected | 2QCY15 Projected | 3QCY15 Projected | 4QCY15 Projected | 1QCY16 Projected | 2QCY16 Projected | 3QCY16 Projected | 4QCY16 Projected |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Gross Sales** | | | | | | | | | | | | | | |
| PNI | 969 | 108 | 193 | - | 183 | 183 | 183 | 183 | 183 | 183 | 183 | 183 | 183 | 183 |
| Periodyne | - | - | - | - | 100 | 300 | 350 | 400 | 450 | 500 | 550 | 600 | 650 | 700 |
| Hope | 408 | 158 | - | 61 | 90 | 155 | 155 | 155 | 155 | 155 | 155 | 155 | 155 | 155 |
| Cymbiotics | 184 | 85 | 32 | - | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 |
| Youngevity | 134 | - | 34 | 41 | - | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 |
| Unicity | 250 | 39 | - | 25 | 35 | 60 | 60 | 60 | 60 | 60 | 60 | 60 | 60 | 60 |
| TriPharma | 756 | 189 | 189 | 63 | 126 | - | - | - | - | - | - | - | - | - |
| Other | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total** | 2,701 | 579 | 448 | 190 | 584 | 778 | 828 | 878 | 928 | 978 | 1,028 | 1,078 | 1,128 | 1,178 |
| **Cost of Goods Sold** | | | | | | | | | | | | | | |
| Periodyne | - | - | - | - | 35 | 124 | 140 | 155 | 171 | 186 | 202 | 217 | 233 | 248 |
| Hope | 200 | 77 | - | 37 | 45 | 45 | 45 | 45 | 45 | 45 | 45 | 45 | 45 | 45 |
| Cymbiotics | 90 | 42 | 13 | - | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 |
| Youngevity | 60 | - | 13 | 24 | - | 15 | 15 | 15 | 15 | 15 | 15 | 15 | 15 | 15 |
| Unicity | 125 | 19 | - | 15 | 17 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 |
| Freight | 26 | 5 | 8 | 3 | 4 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 |
| TriPharma | 27 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Other | 16 | 4 | 6 | 2 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 |
| **Total** | 544 | 147 | 40 | 81 | 130 | 249 | 265 | 280 | 296 | 311 | 327 | 342 | 358 | 373 |
| **Miscellaneous** | | | | | | | | | | | | | | |
| Advertising | 5 | - | - | - | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Accounting | 1 | - | - | - | - | 7 | 7 | 30 | 7 | 7 | 7 | 30 | 7 | 7 |
| Gas Cards | 6 | 2 | - | - | - | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 |
| Bank service | 3 | 1 | - | - | - | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Liquidated damages | - | - | - | 20 | - | - | - | - | - | - | - | - | - | - |
| Postage | 6 | 2 | 1 | 1 | 1 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 |
| Outside Serv | 79 | 34 | 6 | 3 | 12 | 15 | 15 | 15 | 15 | 15 | 15 | 15 | 15 | 15 |
| Dues | 1 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Licenses | 3 | - | - | - | - | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Public Relations | 1 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Marketing | 1 | - | - | - | - | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Supplies | 3 | - | - | - | 3 | - | - | - | 3 | - | - | - | 3 | - |
| State Inc Tax | 2 | - | 1 | - | - | - | - | - | - | - | - | - | - | - |
| Office supplies | 6 | 1 | 2 | - | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 |
| Cleaning services | 7 | 2 | 3 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 |
| **Total** | 124 | 42 | 13 | 26 | 21 | 34 | 34 | 57 | 37 | 34 | 34 | 57 | 37 | 34 |

IncomeExpDetail

plan_Financial_Projections_091014

**EXHIBIT "2"**

## LIST OF EQUITY INFUSIONS

| | | |
|---|---|---|
| 12/17/2012 | $50,000.00 | Wire from Imagenetix |
| 3/10/2014 | $96,000.00 | Ck from Junko Sekito |
| 3/13/2014 | $153,600.00 | Ck from Imagenetix |
| 4/4/2014 | $19,185.00 | Wire received from Neil Edwardson |
| 5/8/2014 | $24,000.00 | Ck from Lawrence Michel |
| 5/8/2014 | $25,000.00 | Ck from MED Homepage |
| 5/13/2014 | $6,000.00 | Wire from Joshua Waldman |
| 5/13/2014 | $48,000.00 | Wire from Linda Moore |
| 5/13/2014 | $19,200.00 | Ck from Roussin |
| 5/13/2014 | $9,600.00 | Ck from Josephine Zolin |
| 5/13/2014 | $9,600.00 | Ck from James Zolin |
| 5/15/2014 | $23,000.00 | Wire from John Tolmosiff |
| 5/22/2014 | $19,200.00 | Ck from Rocco's Dental Studio |
| 5/26/2014 | $19,200.00 | Ck from Kevin Legacy |
| 5/29/2014 | $9,600.00 | MED Homepage |
| 5/29/2014 | $25,000.00 | MED Homepage |
| 5/29/2014 | $240,000.00 | Ck from George Georgakalis |
| 6/2/2014 | $19,185.00 | Wire from Neil Edwardson |
| 6/2/2014 | $1,000.00 | Ck from Crystal Hall |
| 6/6/2014 | $46,000.00 | Wire from Henri Nuber |
| 6/11/2014 | $19,200.00 | Ck from Richard Daniels |
| 6/13/2014 | $13,200.00 | Wire received from Joshua Waldman |
| 6/13/2014 | $9,600.00 | Ck from Richard Daniels |
| 6/30/2014 | $50,000.00 | Ck from MED Homepage |
| 7/14/2014 | $15,000.00 | Ck from Periodyne LLC |
| 7/14/2014 | $19,200.00 | Ck from Periodyne LLC |
| 7/23/2014 | $240,000.00 | Ck from A.W. Opperman |
| 8/6/2014 | $19,200.00 | Ck from Imagenetix |
| 8/11/2014 | $9,600.00 | Wire from David Barkin |
| 8/16/2014 | $300,000.00 | Ck from James Zolin |
| 8/20/2014 | $20,000.00 | Ck from Med Homepage dba Hope Scienc |
| 8/20/2014 | $20,000.00 | Ck from A.W. Opperman |
| 8/14/2014 | $150,000.00 | Ck from Victor Gabourel |
| 8/19/2014 | $150,000.00 | Ck from Princeville Trust G. Georgaklis |
| 8/19/2014 | $19,200.00 | Ck from Richard Daniels |
| 8/22/2014 | $150,000.00 | Ck from IRA Services Trust Co |
| | $2,016,570.00 | |

## CERTIFICATE OF SERVICE

I, Viann Corbin, declare as follows:

I am employed in the County of Orange, State of California; I am over the age of eighteen years and am not a party to this action; and my business address is 660 Newport Center Drive, Fourth Floor, Newport Beach, California 92660, in said County and State.

On September 3, 2014, I served the following document: **DECLARATION OF LOWELL GIFFHORN IN SUPPORT OF CONFIRMATION OF DEBTOR'S THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION** on each of the interested parties as follows:

### SEE ATTACHED SERVICE LIST

by the following means of service:

| | |
|---|---|
| ☒ | **BY ELECTRONIC SERVICE via the Court's Electronic Noticing System** |
| ☐ | **BY MAIL**: I placed a true copy in a sealed envelope addressed as indicated above, on the above-mentioned date. I am familiar with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day in the ordinary course of business. Under that practice, it would be deposited with the U.S. Postal Service on that same date with postage thereon fully prepaid at Newport Beach, California in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit. |
| ☐ | **BY ELECTRONIC MAIL**: From Newport Beach, California, I caused each such document to be transmitted electronically to the parties at the e-mail address indicated above. To the best of my knowledge, the transmission was reported as complete, and no error was reported that the electronic transmission was not completed. A return receipt was requested at the time of the transmission of each such document and I did not receive a notice of failure of receipt of each such document. |
| ☒ | I am employed in the office of Winthrop Couchot Professional Corporation. Robert E. Opera is a member of the bar of this Court. |
| ☒ | **(FEDERAL)** | I declare under penalty of perjury that the foregoing is true and correct. |

Executed on September 3, 2014 at Newport Beach, California.

*/s/ Viann Corbin*
_____
Viann Corbin

-19-

**DECLARATION OF LOWELL GIFFHORN IN SUPPORT OF CONFIRMATION OF DEBTOR'S THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION**

MAINDOCS-#204753-v1-Imagenetix_GiffhornDecReThirdAmdPlan

NEF

- **Bernard D. Bollinger**     bbollinger@buchalter.com, smartin@buchalter.com
- **Matthew Bouslog**     mbouslog@gibsondunn.com, pcrawford@gibsondunn.com
- **John W. Cutchin**     jcutchin@san.rr.com
- **Heather U. Guerena**     huguerena@duanemorris.com, cdarmijo@duanemorris.com;rchurch@duanemorris.com;johta@duanemorris.com;kzakarin@duanemorris.com
- **James Andrew Hinds**     jhinds@jhindslaw.com – COUNSEL TO TRI-PHARMA
- **Garrick A. Hollander**     ghollander@winthropcouchot.com, pj@winthropcouchot.com;vcorbin@winthropcouchot.com;mconour@winthropcouchot.com
- **Jeannie Kim**     jkim@winthropcouchot.com, pj@winthropcouchot.com;vcorbin@winthropcouchot.com
- **Kristin Mihelic**     Kristin.T.Mihelic@usdoj.gov
- **Walter Moore**     WMoore@WaltonLawPC.com, CInclan@waltonlawpc.com
- **Sarah D. Moyed**     moyeds@sec.gov
- **Robert E. Opera**     ropera@winthropcouchot.com, pj@winthropcouchot.com;vcorbin@winthropcouchot.com;mconour@winthropcouchot.com
- **United States Trustee**     ustp.region15@usdoj.gov
- **Dennis Winters**     winterslawfirm@cs.com – COUNSEL TO PACIFIC RAINBOW

-20-

**DECLARATION OF LOWELL GIFFHORN IN SUPPORT OF CONFIRMATION OF DEBTOR'S THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION**

MAINDOCS-#204753-v1-Imagenetix_GiffhornDecReThirdAmdPlan