1  ROBERT E. OPERA – State Bar No. 101182
   ropera@winthropcouchot.com
2  JEANNIE KIM – State Bar No. 270713
   jkim@winthropcouchot.com
3  **WINTHROP COUCHOT**
   **PROFESSIONAL CORPORATION**
4  660 Newport Center Drive, Suite 400
5  Newport Beach, CA 92660
   Telephone:    (949) 720-4100
6  Facsimile:    (949) 720-4111

7  General Insolvency Counsel for Debtor and
8  Debtor-in-Possession Imagenetix, Inc.

9                **UNITED STATES BANKRUPTCY COURT**

10               **SOUTHERN DISTRICT OF CALIFORNIA**

11

12

13  In re:                                  Case No. 12-16423 MM11

14  IMAGENETIX, INC., a Nevada              Chapter 11 Proceeding
    corporation,
15                                          **DECLARATION OF LOWELL W. GIFFHORN IN**
                                            **SUPPORT OF FIRST AND FINAL APPLICATION**
16                                          **FOR COMPENSATION AND REIMBURSEMENT**
                        Reorganized Debtor. **OF EXPENSES OF WINTHROP COUCHOT**
17                                          **PROFESSIONAL CORPORATION, GENERAL**
                                            **INSOLVENCY COUNSEL FOR THE DEBTOR**
18
                                            DATE:      November 13, 2014
19                                          TIME:      2:00 p.m.
                                            PLACE:     Department 1
20                                                     Room 218
                                                       Jacob Weinberger United States Courthouse
21                                                     325 West "F" Street
22                                                     San Diego, CA 92101-6991

23

24

25

26

27

28
   ───────────────────────────────────────────────────────────
   DECLARATION OF LOWELL W. GIFFHORN IN SUPPORT OF FIRST AND FINAL APPLICATION FOR COMPENSATION
   AND REIMBURSEMENT OF EXPENSES OF WINTHROP COUCHOT PROFESSIONAL CORPORATION
   MAINDOCS-#206476-v1-Imagenetix_-_DecGiffhornISOWC1stFinalFeeApp

1       I, Lowell W. Giffhorn, hereby declare and state as follows:

2       1.     I am the Chief Financial Officer of Imagenetix, Inc., the debtor and debtor-in-

3 possession in this Chapter 11 case prior to plan confirmation and the reorganized debtor herein

4 ("Debtor"). The matters set forth herein are within my own personal knowledge, and, if called upon as

5 a witness, I could and would competently testify thereto.

6       2.     I am very familiar with the Debtor's business operations, financial performance, and

7 demand for professionals' services throughout this case. Accordingly, I am very familiar with the

8 services rendered by Winthrop Couchot Professional Corporation ("Winthrop Couchot") in this case.

9       3.     I submit this declaration in support of the First and Final Application for Compensation

10 and Reimbursement of Expenses of Winthrop Couchot Professional Corporation, General Insolvency

11 Counsel for the Debtor ("Application").

12       4.     I have reviewed the Application, the Declaration of Robert E. Opera filed in support of

13 the Application (the "Opera Declaration"), and Winthrop Couchot's monthly billing statements and

14 have no objections to the fees and costs sought therein. I believe that services which gave rise to the

15 fees for services rendered by Winthrop Couchot and costs incurred in connection therewith have been

16 of high quality and, as set forth in detail in the Opera Declaration, have produced substantial benefit to

17 the estate. I also believe that the hourly billing rates of Winthrop Couchot are reasonable based on the

18 skill of Winthrop Couchot's professionals and the customary compensation charged by comparable

19 practitioners in other similar cases filed under the Bankruptcy Code.

20       5.     The Debtor is a corporation organized under the laws of the state of Nevada. The

21 Debtor was founded in 1988.

22       6.     The Debtor is a publicly-traded company. The Debtor's common stock is traded on the

23 Over-The-Counter Bulletin Board market under the trading symbol "IAGXQ."

24       7.     The Debtor is in the business of developing, formulating, licensing and marketing over-

25 the-counter, natural-based nutritional supplements and skin care products. The Debtor's products are

26 proprietary and are offered through multiple channels of distribution, including direct sales to the mass

27

28

1  market through retailers, direct marketing companies, medical, health and nutritional professionals,
2  medical newsletters and direct response radio and television.

3      8.      The Debtor's current officers are:  Williams Spencer ("Spencer") (Chief Executive
4  Officer and President), Debra L. Spencer (Corporate Secretary), and me.

5      9.      On or about June 27, 2006, the Debtor and TriPharma, LLC ("TriPharma") entered into
6  an Exclusive Marketing and Supply Agreement ("Original EMSA").  Pursuant to the Original EMSA,
7  and a number of amendments and restatements thereof, the Debtor granted to TriPharma an exclusive
8  license to distribute certain products worldwide, in accordance with the terms and conditions of the
9  Original EMSA.

10     10.     In or about 2010, disputes arose between the Debtor and TriPharma regarding the
11  Original EMSA.  TriPharma asserted that the Debtor had breached the terms of the Original EMSA,
12  and TriPharma sought injunctive relief and damages against the Debtor.  The Debtor and TriPharma
13  addressed their disputes through arbitration.  On November 2, 2011, an arbitrator issued an award by
14  which the arbitrator awarded to TriPharma the amount of approximately $3,935,000 for its claims
15  asserted against the Debtor and confirmed TriPharma's exclusive right to market certain products
16  under the Original EMSA, in accordance with the terms and conditions of the arbitration award.

17     11.     On April 27, 2012, the arbitration award was confirmed as a judgment of the Superior
18  Court of the State of California for the County of San Diego ("TriPharma Judgment").  On August 3,
19  2012, the TriPharma Judgment was amended to add an additional award of $157,005 in post-
20  arbitration attorneys' fees.

21     12.     The Debtor's efforts to resolve its disputes with TriPharma were unsuccessful.  In 2012,
22  TriPharma commenced efforts to collect on the TriPharma Judgment.  TriPharma's collection efforts
23  caused disruption to the Debtor's business.  The Debtor resorted to Chapter 11 relief in order to obtain
24  a stay of TriPharma's collection efforts, and to obtain a "breathing spell" within which to reorganize its
25  financial affairs.

26     13.     Faced with the financial difficulties referenced hereinabove, on December 17, 2012
27  ("Petition Date"), the Debtor filed a voluntary Chapter 11 petition for relief in order to preserve the

28  **DECLARATION OF LOWELL W. GIFFHORN IN SUPPORT OF FIRST AND FINAL APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES OF WINTHROP COUCHOT PROFESSIONAL CORPORATION**
-3-

1   viability of its business and to implement a debt restructuring plan for the benefit of the Debtor's

2   creditors.

3          14.     The following is a summary of certain significant events which have occurred during

4   the Case:

5                  a.      On or about January 8, 2013, the Debtor filed its Schedules of Assets and

6   Liabilities and Statement of Financial Affairs ("Schedules").

7                  b.      On January 22, 2013, the Debtor attended in the Case a first meeting of creditors

8   conducted pursuant to the Bankruptcy Code.

9                  c.      On December 28, 2012, the Debtor filed in the Court an emergency motion to

10  use any "cash collateral" of Pacific Rainbow International, Inc. ("Pacific Rainbow") and any

11  other secured claimant.  On December 19, 2012, the Court entered an order authorizing the

12  Debtor's interim use of cash collateral, and, on April 15, 2013, entered a final order authorizing

13  the Debtor's use of cash collateral.  The Debtor's use of cash collateral was extended, by a

14  number of orders of the Court, throughout the Application Period.

15                 d.      The Debtor and TriPharma engaged in extensive negotiations, over a number of

16  months, to attempt to reach a comprehensive resolution of their differences.  In August 2013,

17  the efforts made by the Debtor to resolve its differences with TriPharma were successful.  On

18  August 29, 2013, the Debtor and Spencer, on one hand, and TriPharma and TriPharma's

19  principal, Evan Dameshek, on the other hand, entered into that Settlement and Release

20  Agreement ("TriPharma Settlement Agreement") confirming the terms of a settlement reached

21  among them. The TriPharma Settlement Agreement provides, in part, as follows:

22                         i.      The Debtor and TriPharma agreed to an amendment of the claims filed

23  by TriPharma in this case, the liquidation of TriPharma's allowed claims pursuant to a

24  Chapter 11 plan to be filed by the Debtor, and the terms for the Debtor's payment of

25  TriPharma's allowed claims pursuant to the plan.

26                         ii.     The parties to the TriPharma Settlement Agreement agreed that,

27  effective as of the effective date of a Chapter 11 plan to be proposed by the Debtor, and

28

1    pursuant to the plan, the parties would take all acts appropriate to resolve the litigation

2    pending among them, in accordance with the terms and conditions of the TriPharma

3    Settlement Agreement.

4          iii.     The parties to the TriPharma Settlement Agreement agreed that,

5    effective as of the effective date of a Chapter 11 plan to be proposed by the Debtor, the

6    parties would settle and release all claims among each other, in accordance with the

7    terms and conditions of the TriPharma Settlement Agreement.

8          iv.     On August 30, 2013, the Debtor filed a motion requesting that the Court

9    approve the TriPharma Settlement Agreement.  On November 4, 2013, the Court

10    granted such motion.

11         e.     The Debtor's exclusive rights to propose a Chapter 11 plan, and to solicit

12    acceptances to such a plan, were extended by several orders of the Court.

13         f.     On March 17, 2014, the Debtor filed its Chapter 11 Plan of Reorganization

14    ("Plan") and, on March 31, 2014, the Debtor filed its Disclosure Statement Accompanying

15    Debtor's Chapter 11 Plan of Reorganization ("Disclosure Statement").

16         g.     On May 19, 2014, a hearing was conducted with regard to the adequacy of the

17    Disclosure Statement.  The Debtor thereafter amended the Disclosure Statement, and, on May

18    21, 2014, filed its Second Amended Chapter 11 Plan of Reorganization ("Second Amended

19    Plan") and its Second Amended Disclosure Statement Accompanying Second Amended

20    Chapter 11 Plan of Reorganization ("Second Amended Disclosure Statement").  On May 22,

21    2014, the Court entered an order approving the Second Amended Disclosure Statement.

22         h.     The Debtor, with the assistance of Winthrop Couchot, worked diligently to try

23    to negotiate with creditors a consensual Chapter 11 plan.

24         i.     The largest creditor in the Debtor's case is TriPharma.  The Debtor engaged in

25    extensive negotiations, over a number of months, to attempt to negotiate with TriPharma a

26    resolution of the Debtor's differences with TriPharma regarding the terms of a Chapter 11 plan

27    in this case.  The Debtor ultimately was able to settle its differences with TriPharma regarding

28

the terms of a plan, and that settlement was confirmed pursuant to the TriPharma Settlement Agreement.

j.        The largest secured creditor in the Debtor's case is Pacific Rainbow.  Pacific Rainbow advised the Debtor that it objected to the treatment of its allowed secured claim pursuant to the Second Amended Plan and threatened to file opposition to the Second Amended Plan.  The Debtor and Pacific Rainbow engaged in extensive negotiations to attempt to resolve Pacific Rainbow's concerns regarding the treatment of its allowed secured claim pursuant to the Second Amended Plan.  As a result of such negotiations, the Debtor and Pacific Rainbow were able to reach agreement regarding the terms of the Debtor's Chapter 11 plan. The Debtor modified the Second Amended Plan in order to address Pacific Rainbow's concerns, and, on August 29, 2014, filed the Debtor's Third Amended Chapter 11 Plan of Reorganization ("Third Amended Plan").  With the modifications to the treatment of Pacific Rainbow's allowed secured claim contained in the Third Amended Plan, Pacific Rainbow supported the confirmation of the Third Amended Plan.

k.        No objection was filed with respect to the confirmation of the Debtor's Chapter 11 plan. Both TriPharma and Pacific Rainbow cast ballots in support of the confirmation of the Debtor's Chapter 11 plan.  Support for the confirmation of the Debtor's Chapter 11 plan was virtually unanimous.

l.        On September 10, 2014, a hearing was held on the confirmation of the Third Amended Plan.  At that hearing, the Court approved the confirmation of the Third Amended Plan, and, on September 15, 2014, the Court entered an order confirming the Third Amended Plan ("Confirmation Order").  The effective date of the Third Amended Plan was September 16, 2014 ("Effective Date").

15.    The material assets of the Debtor are as follows:

a.        The Debtor holds rights and interests in intellectual property ("Intellectual Property Interests").  While it is difficult for the Debtor to attribute any exact value to the Intellectual Property Interests, the Debtor believes that the aggregate fair market value of the

Intellectual Property Interests exceeds $3.0 million.

        b.     As of September 16, 2014, the Debtor had approximately $235,621 in Cash, $206,493 in accounts receivable and $31,780 in inventory.

        c.     The Debtor was able to accumulate $2,026,170 in equity infusions ("Equity Infusions") from investors to support the funding of its Chapter 11 plan.

            i.     The Debtor has used such funds to make distributions to creditors under the Third Amended Plan.

            ii.     It is my understanding and belief that as of October 15, 2014, Winthrop Couchot was holding in its client trust account a balance of $822,159 in Equity Infusions, an amount sufficient to satisfy the $300,000 administrative claim asserted by the Debtor's special litigation counsel, Shustak & Partners, P.C., formerly known as Shustak Frost & Partners, P.C. ("Shustak Firm"), and the $522,159 unpaid administrative claim of Winthrop Couchot.

        d.     The Debtor has prosecuted diligently an action against Frutarom USA, Inc. ("Frutarom") for damages.  It is difficult for the Debtor to attribute any exact value to such action, but the Debtor believes that such action has substantial value.  The Debtor has not completed its evaluation of other potential causes of action, including any bankruptcy avoidance actions.

16.     The Debtor estimates that the following claims have been asserted against the Debtor:

        a.     As of September 16, 2014, Pacific Rainbow asserted against the Debtor a secured claim in the amount of approximately $747,000, plus its fees and costs.  Pursuant to the provisions of the Third Amended Plan, the Debtor paid in full the amount of such secured claim from the Equity Infusions obtained by the Debtor.

        b.     Pursuant to the TriPharma Settlement Agreement, approved by order of the Court entered on November 4, 2013, TriPharma was granted a pre-confirmation allowed secured claim in the amount of $75,000.  The Debtor paid in full TriPharma's pre-petition allowed secured claim. Pursuant to the TriPharma Settlement Agreement, TriPharma has an

1   allowed secured claim in the amount of $3.5 million, but, provided that the Debtor complies

2   strictly with its payment obligation to TriPharma pursuant to the Third Amended Plan, the

3   Debtor will be able to satisfy TriPharma's allowed secured claim by paying to TriPharma

4   pursuant to the Third Amended Plan a total payment of $2.5 million (plus any interest thereon

5   as provided by the Third Amended Plan) or, if the Debtor satisfies TriPharma's allowed

6   secured claim within eighteen (18) months after the Effective Date of the Third Amended Plan,

7   a total of $2.0 million, less the $100,000 in "Adequate Protection Payments" paid by the

8   Debtor to TriPharma.  The Debtor has paid the initial $150,000 distribution required to be paid

9   to TriPharma under the Third Amended Plan from the Equity Infusions obtained by the Debtor.

10         c.     There are no other material secured claims in the Debtor's case.

11         d.     The primary administrative claimants in the Debtor's case are:

12   the Shustak Firm and Winthrop Couchot.  The Shustak Firm has an administrative claim in the

13   amount of $300,000, and, as set forth hereinabove, Winthrop Couchot has an unpaid

14   administrative claim in the amount of $522,159.61.

15         e.     I believe that there are no priority unsecured claims in the case, except for an

16   approximately $1,705 priority tax claim asserted against the Debtor.

17         f.     Based upon the Debtor's evaluation of the proofs of claim filed in the Debtor's

18   case and the information contained in the Debtor's Schedules, the Debtor estimates that

19   approximately $1.5 million in general unsecured claims have been asserted against the Debtor.

20   The Debtor projects that approximately $725,000 in general unsecured claims will be allowed

21   in the case.  Under the Third Amended Plan, the Debtor is required to pay a 20% distribution

22   on account of allowed general unsecured claims, payable in sixteen equal quarterly installments

23   over the term of the Third Amended Plan.  The Debtor intends, however, to pre-pay the 20%

24   distribution on account of allowed general unsecured claims, with such payment likely to be by

25   made by November 2014.

26         g.     As of October 15, 2016, the Debtor had available to it $822,159 in Equity

27   Infusions on deposit in the Firm's client trust account to pay the administrative claims of the

28

1    Shustak Firm and Winthrop Couchot. Accordingly, I believe that the Debtor has an ample

2    amount of cash available to it to pay administrative claims, plus all accrued and accruing

3    operating expenses and accruing obligations under the Third Amended Plan.

4         17.    Prior to the Petition Date, TriPharma and the Debtor were engaged in contentious

5    litigation. After the commencement of the Debtor's case, TriPharma adopted an adversarial approach

6    to the Debtor's case, objecting to almost every proceeding commenced by the Debtor in the early

7    stages of this case, including the Debtor's motion to use cash collateral, the Debtor's application to

8    employ Winthrop Couchot, the Debtor's application to employ the Shustak Firm, and the Debtor's

9    proposed compensation of its insiders. TriPharma expressed repeatedly to the Debtor TriPharma's

10    lack of confidence in the Debtor and the Debtor's ability to reorganize successfully its financial affairs.

11    The Debtor required that Winthrop Couchot devote substantial time and effort to attempting to resolve

12    with TriPharma TriPharma's disputes with Debtor. I believe that Winthrop Couchot played a critical

13    role in the settlement negotiations which resulted in the TriPharma Settlement Agreement. By the

14    TriPharma Settlement Agreement, the litigation between the Debtor and TriPharma was resolved,

15    TriPharma's claims were reduced substantially, and TriPharma agreed to support the Debtor's efforts

16    to reorganize its financial affairs. It is my firm belief that the TriPharma Settlement Agreement paved

17    the way for the successful reorganization of the Debtor's financial affairs.

18         18.    Over a period of several months, the Debtor negotiated with TriPharma the terms for

19    the treatment of TriPharma's claims pursuant to a Chapter 11 plan to be proposed by the Debtor. I

20    believe that the Debtor's negotiations with TriPharma regarding the terms of the Debtor's Chapter 11

21    plan were difficult and frequently contentious, but such negotiations ultimately proved to be

22    successful. Pursuant to the TriPharma Settlement Agreement, the Debtor's disputes with TriPharma

23    regarding the terms of the Debtor's Chapter 11 plan were resolved, and TriPharma agreed to support

24    the confirmation of a plan incorporating the terms and conditions of the TriPharma Settlement

25    Agreement.

26         19.    I also believe that the Debtor's negotiations with Pacific Rainbow regarding the terms

27    of the Debtor's Chapter 11 plan were difficult. Accordingly, the Debtor required that Winthrop

28

1    Couchot engage in negotiations with Pacific Rainbow regarding the treatment of Pacific Rainbow's

2    allowed secured claim pursuant to the Debtor's Chapter 11 plan. At one point, I believed that plan

3    negotiations would fall apart and that litigation could ensue between Pacific Rainbow and the Debtor

4    regarding the confirmation of the Debtor's Chapter 11 plan.  Based on my involvement in the case, I

5    believe that Winthrop Couchot expended significant effort to work with Pacific Rainbow's counsel to

6    keep the plan negotiations on track and to achieve a consensual plan in this case.

7         20.    I firmly believe that any failure to achieve a confirmed plan in this case likely would

8    have resulted in a resolution of this case significantly less favorable for creditors than the treatment of

9    creditors' claims provided by the Third Amended Plan.  I further believe that, if no reorganization

10   proved to be viable in this case and the Debtor's case were converted to a Chapter 7 liquidation,

11   general unsecured creditors would have obtained no recovery in this case.

12        21.    It is my opinion that from the beginning of the Debtor's case, the Debtor faced

13   significant obstacles to a successful reorganization.  The Debtor required Winthrop Couchot's services,

14   in the form of considerable time and attention devoted to the needs of this case, in order to maximize

15   the recovery by creditors in this case.

16        22.    The Debtor is a publicly-traded company.  The Debtor required Winthrop Couchot to

17   address issues pertaining to the public nature of the Debtor pursuant to the Debtor's Chapter 11 plan.

18   The Debtor's management, including Spencer and me, worked closely with Winthrop Couchot with

19   respect to the Debtor's efforts to obtain Equity Infusions to fund the Debtor's Chapter 11 plan.

20        23.    Winthrop Couchot addressed, and assisted the Debtor in its efforts to resolve the

21   difficult issues that arose in the case in order to facilitate a reorganization of the Debtor's financial

22   affairs.

23        24.    I believe that the terms of the Third Amended Plan are fair to creditors and reflect as

24   favorable a recovery as is likely available to creditors under the circumstances of this case.  The Debtor

25   already has made substantial distributions to creditors under the Third Amended Plan.

26        25.    The Debtor paid to Winthrop Couchot only a relatively small retainer payment in this

27   case ($82,717.64).

28

23.     Winthrop Couchot addressed, and assisted the Debtor in its efforts to resolve the difficult issues that arose in the case in order to facilitate a reorganization of the Debtor's financial affairs.

24.     I believe that the terms of the Third Amended Plan are fair to creditors and reflect as favorable a recovery as is likely available to creditors under the circumstances of this case.  The Debtor already has made substantial distributions to creditors under the Third Amended Plan.

25.     The Debtor paid to Winthrop Couchot only a relatively small retainer payment in this case ($82,717.64).

26.     The Debtor is current on all quarterly payments due to the Office of the United States Trustee.  As of September 16, 2014, the Debtor's estate had a total of approximately $235,621 of undistributed cash on hand.

Based upon the foregoing, I respectfully submit that good cause exists for this Court to award to Winthrop Couchot the fees and costs for which it has applied pursuant to the Winthrop Couchot Application.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 16th day of October 2014, at San Diego, California.


Lowell W. Giffhorn

1

**CERTIFICATE OF SERVICE**

    I, Melody Conour, declare as follows:

2

    I am employed in the County of Orange, State of California; I am over the age of eighteen years and am not a party to this action; and my business address is 660 Newport Center Drive, Fourth Floor, Newport Beach, California 92660, in said County and State.

3

4

    On October 16, 2014, I served the following document: **DECLARATION OF LOWELL GIFFHORN IN SUPPORT OF FIRST AND FINAL APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES OF WINTHROP COUCHOT PROFESSIONAL CORPORATION, GENERAL INSOLVENCY COUNSEL FOR THE DEBTOR; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF ROBERT E. OPERA IN SUPPORT THEREOF** on each of the interested parties as follows:

5

6

**SEE ATTACHED SERVICE LIST**

7

by the following means of service:

8

9

| ☒ | **BY ELECTRONIC SERVICE via the Court's Electronic Noticing System** |
|---|---|
| ☒ | **BY MAIL:** I placed a true copy in a sealed envelope addressed as indicated above, on the above-mentioned date. I am familiar with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day in the ordinary course of business. Under that practice, it would be deposited with the U.S. Postal Service on that same date with postage thereon fully prepaid at Newport Beach, California in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.<br><br>Office of the U.S. Trustee<br>Attn: Kristin Mihelic, Esq.<br>402 W. Broadway, #600<br>San Diego, CA 92101 |
| ☐ | **BY ELECTRONIC MAIL:** From Newport Beach, California, I caused each such document to be transmitted electronically to the parties at the e-mail address indicated above. To the best of my knowledge, the transmission was reported as complete, and no error was reported that the electronic transmission was not completed. A return receipt was requested at the time of the transmission of each such document and I did not receive a notice of failure of receipt of each such document.<br><br>Debtor: Lowell Giffhorn: lowellgiffhorn@aim.com |
| ☒ | I am employed in the office of Winthrop Couchot Professional Corporation. Robert E. Opera is a member of the bar of this Court. |
| ☒ | **(FEDERAL)**      I declare under penalty of perjury that the foregoing is true and correct. |

10

11

12

13

14

15

16

17

18

19

20

21

22

    Executed on October 16, 2014 at Newport Beach, California.

23

24

                          */s/ Melody Conour*
                          Melody Conour

25

26

27

28

NEF SERVICE LIST

- **Bernard D. Bollinger**    bbollinger@buchalter.com, smartin@buchalter.com
- **Matthew Bouslog**    mbouslog@gibsondunn.com, pcrawford@gibsondunn.com
- **John W. Cutchin**    jcutchin@san.rr.com
- **Heather U. Guerena**    huguerena@duanemorris.com,
  cdarmijo@duanemorris.com;rchurch@duanemorris.com;johta@duanemorris.com;kzakarin@duanemorris.com
- **James Andrew Hinds**    jhinds@jhindslaw.com
- **Garrick A. Hollander**    ghollander@winthropcouchot.com,
  pj@winthropcouchot.com;vcorbin@winthropcouchot.com;mconour@winthropcouchot.com
- **Jeannie Kim**    jkim@winthropcouchot.com, pj@winthropcouchot.com;vcorbin@winthropcouchot.com
- **Kristin Mihelic**    Kristin.T.Mihelic@usdoj.gov, tiffany.l.carroll@usdoj.gov
- **Walter Moore**    WMoore@WaltonLawPC.com, CInclan@waltonlawpc.com
- **Sarah D. Moyed**    moyeds@sec.gov
- **Robert E. Opera**    ropera@winthropcouchot.com,
  pj@winthropcouchot.com;vcorbin@winthropcouchot.com;mconour@winthropcouchot.com
- **Dheeraj Singhal**    dksinghal@dcdmlawgroup.com
- **United States Trustee**    ustp.region15@usdoj.gov
- **Dennis Winters**    winterslawfirm@cs.com